Anthony M. Livoti, J.
In this equity action, plaintiff seeks judgment directing defendants to deliver to plaintiff Renault and Peugeot motor vehicles and automotive parts in the same manner and numbers as were delivered prior to defendants’ *850 refusal to deliver same to plaintiff. In addition, plaintiff seeks recovery of substantial damages sustained as a result of defendants’ refusal to deliver such cars and automotive parts.
Plaintiff herein is a. domestic corporation engaged in the business of selling automobiles to the public.
Defendant, Dolphin Motors, Inc., is a domestic corporation, the exclusive distributor of Renault and Peugeot automobiles in New York City.
The other defendant, Renault, Inc., is the exclusive United States importer of Renault and Peugeot automobiles.
Plaintiff alleges that in May of 1960, defendant Dolphin Motors, Inc., appointed and designated plaintiff a duly authorized and franchised dealer of Renault and Peugeot automobiles. It is admitted that thereafter Renault and Peugeot automobiles and parts were delivered by the distributor Dolphin to the plaintiff continuously until August 16, 1961. At this time Dolphin refused any further deliveries. Plaintiff claims that Renault refused to intervene to require Dolphin to make deliveries. Further, Renault refused to continue serving plaintiff with technical information concerning the Renault and Peugeot automobiles.
Plaintiff, relying upon what it believed to be an appointment as an authorized Renault and Peugeot dealer, invested substantially in the business, and between May, 1960 and August 16, 1961, plaintiff corporation embarked on a campaign (which it considered to have been extremely successful) to establish good will for both itself as well as Renault and Peugeot products.
Plaintiff predicates its claim for the relief sought on section 197 of the General Business Law, which provides: “No manufacturer or distributor, or any agent of such manufacturer or distributor, shall terminate any contract, agreement, or understanding or renewal thereof for the sale of new motor vehicles to a distributor or dealer, as the case may be, except for cause.”
Defendants’ position is that section 197 of the General Business Law is unconstitutional, nor does it apply to the agreement entered into between defendants and plaintiff Kerber Motors Corp., in that the agreement was only temporary and did not place the plaintiff in the status of an authorized dealer. Defendants also set forth the defense that the termination of the agreement was justified in that there was “cause” for such action on their part.
It is with great reluctance, and as a last resort that the courts will strike down a solemn legislative enactment on the ground that it conflicts with the State or Federal Constitutions. Every presumption is in favor of the validity of the statute, and every effort will be made to give its ambiguous language such a mean *851 ing that the act may stand without conflict with the fundamental law. In this regard it has been said that statutes must be construed to avoid not only the conclusion that they are unconstitutional but also to avoid any grave doubts upon that score. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150.)
The evidence in this case has established that on numerous occasions, plaintiff presented repair claims to defendant Dolphin. These claims represented that plaintiff had performed work and installed parts in customers’ cars. The procedure on warranty claims is that the dealer submits a claim, certifies that the work listed was done, and accompanies the claim with a repair order signed by the customer. In every instance a warranty claim submitted by the dealer (plaintiff) bears the following certification :1 ‘ On behalf of the servicing dealer, I hereby certify above repairs were made on owner’s vehicle.” These certifications must be made by the dealer or dealer’s service manager.
Defendants produced during the trial witnesses listed by plaintiff as customers for whom automobile repair work was done under a warranty policy. These witnesses when confronted with repair claims submitted in their names, for work allegedly done on their cars, stated that not only were the signatures affixed to the repair orders not in their handwriting, but further the work listed thereon had never been done on their cars.
Plaintiff made no attempt to prove that it had done any of the work with regard to the warranty claims, nor that the signatures affixed thereto were genuine. In fact, Mr. Philip Kerber, president of Kerber Motors, Inc., admitted that very often the customer’s signature was not obtained, merely that an employee in the office signed customers’ names. There can be no question, based on the testimony, that this was completely unauthorized and without the knowledge of the customers. Moreover, this practice is a violation of the Warranty Policy Manual which requires a copy of the repair order to be signed by the owner of the car on which the work is to be done. The fact that Mr. Kerber knew and apparently was a party to the practice places plaintiff in a very untenable position. It is well settled that any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fairminded men, will be sufficient to make the hands of the applicant unclean.
It has been established to the court’s satisfaction that plaintiff submitted claims for repair work, work which was never done, that affixed to said claims were signatures of customers which were not genuine, and that plaintiff received credit on these claims. The very document upon which plaintiff relies (Dealers’ Franchise Agreement), provides as cause for termination, “ sub *852 mission by Dealer to Distributor of any false or fraudulent report, statement, declaration or claim.”
Thus the court feels that plaintiff’s course of conduct is a bar to the relief sought in this action.
Accordingly, the complaint is dismissed.